# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| NICK HARVEY, CINDY STURTZ, and DAVID AUSBORN, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>AB ELECTROLUX, ELECTROLUX HOME PRODUCTS, INC., ELECTROLUX HOME PRODUCTS NORTH AMERICA, and ELECTROLUX HOME CARE PRODUCTS, INC.,<br><br>Defendants. | No. C 11-3036-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFFS' MOTION TO PROCEED AS A COLLECTIVE ACTION AND FACILITATE NOTICE UNDER 29 U.S.C. § 216(b)** |

_____

This case is a putative collective action pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and a putative class action under Rule 23 of the Federal Rules of Civil Procedure pursuant to the Iowa Wage Payment Collection Law (IWPCL), IOWA CODE CH. 91A. The claims are premised on alleged failure to pay hourly, non-exempt "production employees" or employees in "other similarly titled positions" at the defendants' now-closed plant in Webster City, Iowa,[1] for time or overtime for donning protective equipment and preparing for work before their shifts began and for time spent and expenses for cleaning and maintaining some of their safety equipment outside of the work place. The plaintiffs filed their original Complaint (docket no. 1) on August 3, 2011,

---

[1] The defendants assert that the Webster City Plant closed March 31, 2011.

and their First Amended Class Action Complaint, Representative Collective Action Complaint, And Jury Demand (docket no. 50) on September 13, 2011. The defendants filed an Answer And Defenses (docket no. 59) on October 7, 2011, denying the plaintiffs' FLSA and IWPCL claims and asserting some twenty-two affirmative defenses.

This case is now before me on the plaintiffs' December 14, 2011, Motion To Proceed As A Collective Action And Facilitate Notice Under 29 U.S.C. § 216(b) (docket no. 79). In that motion, the plaintiffs ask me to (1) conditionally certify this case as a § 216(b) collective action; (2) require the defendants to produce a computer-readable data file containing the names, addresses, and telephone numbers of potential opt-in members so that notice may be issued; and (3) authorize notice in the form proposed by the plaintiffs to all similarly-situated persons, defined as all individuals who were employed by the Electrolux Webster City Plant in the State of Iowa as hourly paid, non-exempt, production employees or other similarly titled positions at any time within the last three years before the filing of their motion to the present to inform them of their right to opt in to this lawsuit. That motion was supported by a brief, declarations of the three named plaintiffs, declarations of six other former hourly employees of the Electrolux Webster City Plant, the declaration of a former "area manager" who oversaw 3 supervisors and 30 to 40 production workers at the Webster City Plant, the declaration of a former "quality control supervisor" who oversaw approximately 300 production workers at the Webster City Plant, a proposed Notice Of Collective Action Lawsuit, and a May 31, 2006, Memorandum from the U.S. Department of Labor following the United States Supreme Court's decision in *IBP v. Alvarez*, 126 S. Ct. 514 (2005).

The plaintiffs argue that, since the filing of their lawsuit, even without notice authorized by the court, almost 1,000 additional production employees have filed "opt-in consent forms" to participate in this action. The plaintiffs believe that the total number of

putative collective action members is approximately 1,500. The plaintiffs assert that they have met the minimal showing required to demonstrate that there are additional similarly-situated employees who are victims of a common illegal pay policy or practice, where testimony from the named and opt-in plaintiffs describes nearly identical experiences with and observations of production workers having to perform the same unpaid work, including donning and doffing of personal protective equipment (PPE) and home washing of armguards and gloves, and a common scheme by the defendants to fail to record, compensate, or otherwise account for the time worked by the putative collective action members in donning, doffing, cleaning, and maintaining PPE. They argue that the merits of their claims are not at issue at this preliminary stage of conditional certification, only whether they have made the necessary showing that there are potentially similarly-situated employees. They argue that the putative collective action members must be notified before the statute of limitations runs on their claims. They also argue that their proposed Notice and Opt-In Consent Forms are adequate.[2]

The defendants filed a Resistance To Plaintiffs' Motion To Proceed As A Collective Action And Facilitate Notice Pursuant To 29 U.S.C. § 216(b) (docket no. 84) on January 30, 2012. Their Resistance is accompanied by a supporting brief, a declaration of a former hourly employee concerning different practices in the production lines and support departments, a declaration of a former "labor relations manager" in the defendants' plant concerning the collective bargaining agreement covering plant employees and the various positions occupied at various times by the persons providing declarations on behalf of the plaintiffs, and a proposed modified Notice Of Collective Action Lawsuit.

---

[2] No sample Opt-In Consent Form was attached to the plaintiffs' motion. However, signed copies of a Consent To Join Collective Action have been submitted with various Notices Of Consent Filing. *See* docket nos. 3-25, 30-49, 68-73.

The defendants argue that any collective action conditionally certified should be narrowed to exclude "donning" claims as to employees of the maintenance, tool and die, press, receiving inspection, and dimensional inspection departments, because employees in those support departments did not routinely don appropriate PPE until after they were on the clock and had received daily job assignments; to exclude any "pre-shift" claims, because there was no common policy requiring employees to perform pre-shift tasks at their work stations and no evidence that employees were required to wash sleeves or gloves at home, rather than doing so by choice, because the company provided clean sleeves and gloves at all times to employees who wanted them; and to exclude employees who worked at the plant more than two years ago, because there is not a scintilla of evidence of any willful conduct that would extend the statute of limitations period from two years to three. The defendants argue that, to the extent that the plaintiffs seek some kind of tolling of the statute of limitations, tolling is inappropriate, because 29 U.S.C. § 256(b) states when the case commences as to opt-in plaintiffs. The defendants also argue that the plaintiffs' proposed Notice is defective, in that it does not indicate that the court takes no position on the merits of the collective claims, it does not properly restrict the putative collective action members in the way that they argue, just above, and it indicates that the persons receiving the notice "are" rather than "may be" similarly situated to the named plaintiffs. The defendants also argue that they should not be required to produce telephone numbers of potential plaintiffs, at least until mail is returned as undeliverable, to avoid improper solicitation of opt-in plaintiffs.

The plaintiffs filed a Reply (docket no. 89) on February 14, 2012, accompanied by additional declarations, some from former employees in the support departments that the defendants contend should be excluded from the Notice, and a modified Notice. In their Reply, the plaintiffs assert that the defendants are attempting to inject factual disputes

4

about the merits into what should be a preliminary and lenient inquiry into whether a collective action should be conditionally certified that does not address the merits. They also point out that the defendants have effectively conceded that notice is appropriate to most of the employees that the plaintiffs have identified. They also point out that the FLSA requires payment for hours that an employee is "suffered" or "permitted" to work, not just hours the employer "required" the employee to work. Similarly, they argue that they are not required to demonstrate "willfulness" at this stage of the proceedings and that limiting notice to employees who worked only in the last two years may improperly preclude viable claims if willfulness can ultimately be shown. While the plaintiffs concede that it is appropriate to modify the Notice to indicate that the court takes no position on the merits and that the recipients "may be" similarly situated to the named plaintiffs, they contend that the Notice is otherwise adequate. They also assert that tolling of the statute of limitations is appropriate to preclude the defendants from cynically prolonging matters by refusing to consent to notice of a collective action, thus causing some potential plaintiffs to lose eligibility. They also argue that contact telephone numbers should be provided to ensure that all putative collective action members are promptly located and notified.

In mid-2008, in *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 890-94 (N.D. Iowa 2008), I addressed in some detail the legal standards for collective actions under 29 U.S.C. § 216(b) and, more specifically, the requirements for conditionally certifying such a collective action. I noted that the Eighth Circuit Court of Appeals had not yet elaborated on what "similarly situated" means, for purposes of a collective action and authorization of notice, *see id*. at 890, and I now note that the Eighth Circuit Court of Appeals still does not appear to have done so. I also note that the parties' statements of the applicable standards are essentially consistent with each other and with my statement

5

of those standards in *Bouaphakeo*. Thus, I will turn directly to application of those standards to the question of conditional certification of a collective action in this case.

In light of the numerous declarations offered in support of conditional certification, I conclude that the plaintiffs have made more than mere allegations to support their contention that similarly-situated potential plaintiffs exist. *See id*. at 892. Evidence that almost 1,000 putative collective action members have already opted in is persuasive evidence that the defendant employer should be put to the expense and effort of notice to a conditionally-certified class of claimants. *See id*. & *id*. at 896. The various declarations are also adequate evidence of a widespread discriminatory plan, as well as evidence that a manageable class exists. *See id*. I conclude that, on the present showing, conditional certification is appropriate, because the plaintiffs have offered more than substantial allegations that the putative collective action members were similarly-situated and were together the victims of a single decision, policy, or plan. *Id*. & *id*. at 896-97.

I also conclude that the defendants' attempts to whittle away at the scope of the conditionally-certified class all involve precisely the sort of challenges to the merits that are inappropriate at either the conditional certification stage or the final certification stage. *See id*. at 893. Nevertheless, I also note that modification of the Notice to indicate that recipients "may be" members of a class ultimately entitled to relief and that any relief may be limited to a two-year period prior to filing of the opt-in adequately address the defendants' concerns about the scope and time frame of any class members that are ultimately entitled to relief. Similarly, I agree with the defendants that the Notice *must* indicate that the court has made no determination, and takes no position on, the merits of the class's or any putative members' claims, not simply that "[t]he Court has yet to make any determination on the merits," as stated in the plaintiffs' modified Notice, Exhibit J, Notice, § II.

6

I find it necessary to comment on only two more issues.

The first is the issue of tolling of the statute of limitations. I do not believe that the plaintiffs' original motion or either version of the Notice that they provided actually indicates that I must make a determination at this time on whether tolling of the statute of limitations in some respect is appropriate. Until and unless an adequate request and showing that the statute of limitations should be tolled are made, 29 U.S.C. § 256 governs when the action commences as to opt-in plaintiffs. Thus, while notice may properly issue to persons employed at the defendants' Webster City Plant in appropriate positions within the last three years before the filing of the plaintiffs' motion for conditional certification to the present, that time frame does not necessarily coincide with the statute of limitations period for viable claims.

The second remaining issue, whether the defendants must be required to provide telephone numbers as well as other contact information for putative collective action members, is one that I find I must address on the merits. I note that some district courts in the Eighth Circuit have, even over the defendants' objections, required defendants in putative collective actions to provide telephone numbers of putative collective action members to facilitate notice, at least where adequate justifications are offered for getting such information (usually to facilitate contact with potential class members who have moved, but also to verify and organize opt-in forms), where the telephone numbers are strictly a supplement to notice by first-class mail, where there are prohibitions on improper use of the telephone numbers, for example, for purposes of solicitation of opt-ins, and where a protective order to protect confidentiality of the information is in place. *See, e.g., Nobles v. State Farm Mut. Auto. Ins. Co.*, 2011 WL 5563444, *2 (W.D. Mo. Nov. 15, 2011) (ordering disclosure of such information); *Resendi-Ramirez v. P & H Forestry, L.L.C.*, 544 F. Supp. 2d 785, 785-87 (W.D. Ark. 2008) (same). On the other hand, some

7

courts have refused to allow disclosures of telephone numbers.  *See, e.g., Littlefield v. Dealer Warranty Servs., L.L.C.*, 679 F. Supp. 2d 1014, 1019 (E.D. Mo. 2010) (denying disclosure of such information without further order of the court); *Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 501 (D. Neb. 2009) (same).  I recognize that the need for alternate contact information for putative collective action plaintiffs may be more urgent in a case in which the plant at which the putative plaintiffs all worked has closed, and some share of the former workforce has, presumably, dispersed in pursuit of other employment.  Nevertheless, I think it is at least as likely that first-class mail forwarding will reach relocated putative plaintiffs as a "stale" telephone number will be.  Moreover, I believe that there are legitimate concerns with improper solicitation, even unintentional, and privacy that counsel against providing telephone numbers without some showing that notice by first-class mail is actually insufficient.  Here, where approximately two-thirds of the anticipated collective action members have already provided opt-in forms, there seems to be little doubt that notice of the lawsuit is already getting out.  I will only require the defendants to provide names and addresses of putative collective action members at this point, but I will not require disclosure of telephone numbers without a more specific and particularized showing that notice by first-class mail has been ineffective.

THEREFORE, the plaintiffs' December 14, 2011, Motion To Proceed As A Collective Action And Facilitate Notice Under 29 U.S.C. § 216(b) (docket no. 79) is **granted**, as follows:

1. This action is **conditionally certified** as a § 216(b) collective action;

2. The defendants **shall produce** a computer-readable data file containing the names and addresses of putative opt-in members so that notice may be issued; and

3. Notice by the plaintiffs, in the form proposed in the plaintiffs' Exhibit J, as modified herein, to notify putative collective action members of their right to opt in to this lawsuit, is **authorized** to the following:

> All individuals who were employed by the Electrolux Webster City Plant in the State of Iowa as hourly paid, non-exempt, production employees or other similarly titled positions at any time between December 14, 2008, and December 14, 2011.

**IT IS SO ORDERED.**

**DATED** this 9th day of March, 2012.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA